1 | David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
2 | 600 Corporate Pointe, Suite 1170
Culver City, CA 90230
3 | Tel: (213) 446-6652
Fax: (212) 202-7880
4 | dbower@monteverdelaw.com

5 | *Counsel for Plaintiff Joseph Zappia*

6

7 | **UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANSISCO DIVISION**
8

9 | JOSEPH ZAPPIA, On Behalf Of Himself   Civil Action No. _____
And All Others Similarly Situated,
10

11 | Plaintiff,   **COMPLAINT**

12 | v.   **CLASS ACTION**

13 | MORPHIC HOLDING, INC., GUSTAV   **DEMAND FOR JURY TRIAL**
CHRISTENSEN, TIMOTHY SPRINGER,
14 | NORBERT BISCHOFBERGER, MARTIN
EDWARDS, SUSANNAH GRAY, NISHA
15 | NANDA, AMIR NASHAT, JOSEPH P.
SLATTERY, PRAVEEN TIPIRNENI,
16 | RAINIER ACQUISITION CORPORATION,
and ELI LILLY AND COMPANY.
17
Defendants.
18

19 | Plaintiff Joseph Zappia ("Plaintiff"), by his undersigned attorneys, alleges upon personal

20 | knowledge with respect to himself and his own acts, and upon information and belief as to all other

21 | allegations herein, based upon, *inter alia*, the investigation of his counsel, as follows:

22 | **NATURE OF THE ACTION**

23 | 1.      This action is brought by Plaintiff against Morphic Holding, Inc. ("Morphic" or the

24 | "Company") and the members of the Company's board of directors ("Board") for (i) violating

25 | Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C.

26 | § 78n(e) and § 78t(a), and (ii) breaching their fiduciary duties under Delaware law. Plaintiff's

27

28

claims arise in connection with the Board's recommendation that the stockholders of the Company ("Morphic Stockholders") tender their shares to Rainier Acquisition Corporation ("Rainier"), an affiliate of Eli Lilly and Company ("Lilly"), pursuant to Rainier's tender offer ("Tender Offer") to acquire all of the issued and outstanding shares of Morphic for $57.00 per share in cash.

2.      On July 8, 2024, Morphic and Lilly announced that they had entered into an agreement ("Merger Agreement") providing for Lilly to purchase all of the outstanding shares of Morphic for $57.00 per share in cash ("Merger Consideration") via the Tender Offer.

3.      On July 19, 2024, Lilly caused Rainier to commence the Tender Offer by filing a Tender Offer Statement on Schedule TO ("TO Statement") with the Securities and Exchange Commission ("SEC"). The TO Statement provides that the Tender Offer expires one minute after 11:59 p.m., Eastern Time, on August 15, 2024 ("Expiration Time"), unless extended or earlier terminated in accordance with the Merger Agreement. Upon satisfaction of various conditions described in the TO Statement, the Tender Offer will be consummated with Rainier merging into and with Morphic, and Morphic surviving as a wholly-owned subsidiary of Lilly pursuant to Section 251(h) of the General Corporation Law of the State of Delaware ("Merger").

4.      On July 19, 2024, Defendants filed a materially false and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") with the SEC recommending that Morphic Stockholders tender their shares pursuant to the Tender Offer. The material misrepresentations and omissions in the Recommendation Statement specified below render it false and misleading in violation of the above-referenced Exchange Act provisions and Delaware law.

5.      It is imperative that such violations are promptly cured to enable Morphic Stockholders to make an informed decision concerning whether to tender their shares to Lilly before the Expiration Time.  Therefore, Plaintiff seeks to enjoin expiration of the Tender Offer and consummation of the Merger until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by himself and similarly-situated investors as a result of such violations.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(e) and 20(a) of the Exchange Act. This Court also has supplemental subject matter jurisdiction over the Delaware state law claims for breaches of fiduciary duty pursuant to 28 U.S.C. § 1367.

7.      Personal jurisdiction exists over each Defendant because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), which provides that any action to enforce any liability or duty under the Exchange Act, or to enjoin any violation of the Exchange Act, may be brought in any district "wherein any act or transaction constituting the violation occurred." The Recommendation Statement in which the false and misleading statements and omissions violating federal and state law appear was drafted by Morphic's counsel, Fenwick & West LLP ("Fenwick"), out of offices in this district; indeed, the names of six individual attorneys at Fenwick's San Franciso office appears on the cover page of the Recommendation Statement. Further, at least one Defendant, Board member Norbert Bischofberger, resides and/or works in this district. *See* https://www.linkedin.com/in/norbert-bischofberger-06a0a9150/, https://www.kronosbio.com/company/#leadership and https://www.kronosbio.com/contact-page/.

CLASS ACTION COMPLAINT

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, a continuous stockholder of Morphic stock.

10.     Defendant Morphic is a Delaware corporation with its principal executive offices located at 35 Gatehouse Drive, A2, Waltham, Massachusetts, 02451.

11.     Defendant Gustav Christensen ("Christensen") has served as Chairman of the Board at all relevant times.

12.     Defendant Timothy Springer ("Springer") has served as a member of the Board at all relevant times. As of April 1, 2024, Springer, and entities and individuals affiliated with Springer, owned 15.5% of Morphic's outstanding shares.

13.     Defendant Norbert Bischofberger has served as a member of the Board at all relevant times.

14.     Defendant Martin Edwards has served as a member of the Board at all relevant times.

15.     Defendant Susannah Gray has served as a member of the Board at all relevant times.

16.     Defendant Nisha Nanda ("Nanda") has served as a member of the Board at all relevant times. Since January 2019, Nanda has worked as a senior executive at Lilly.

17.     Defendant Amir Nashat ("Nashat") has served as a member of the Board at all relevant times. Nashat is an executive partner at Polaris Partners ("Polaris"), a venture capital firm, where he has worked since 2002. As of April 1, 2024, Nashat and entities affiliated with Polaris owned 4.1% of Morphic's outstanding shares. As detailed further below, since January 28, 2021, Polaris has invested alongside Lilly in at least four healthcare technology startups.

18.     Defendant Joseph P. Slattery has served as a member of the Board at all relevant times.

19.     Defendant Praveen Tipirneni ("Tipirneni") has served as Morphic's CEO and as a member of the Board at all relevant times. As of April 1, 2024, Tipirneni, and entities affiliated with Tipirneni, owned 3.3% of Morphic's outstanding shares.

CLASS ACTION COMPLAINT

20. Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Individual Defendants," and together with Morphic, collectively, the "Defendants."

### NECESSARY PARTIES

21. Rainier is a Delaware corporation and wholly-owned subsidiary of Lilly that was formed solely for the purpose of facilitating the acquisition of Morphic by Lilly.

22. Lilly is an Indiana corporation that develops, manufactures and markets pharmaceuticals. Lilly is publicly-traded on the New York Stock Exchange under the ticker "LLY."

### CLASS ACTION ALLEGATIONS

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Morphic (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24. This action is properly maintainable as a class action. *First*, the Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of July 3, 2024, there were 50.10 million basic Morphic shares outstanding. The actual number of public stockholders of Morphic will be ascertained through discovery.

25. *Second*, there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following: (i) whether Defendants have misrepresented or omitted material information in the Recommendation Statement, in violation of Sections14(e) of the Exchange Act and Delaware state law; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

26. *Third*, Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

CLASS ACTION COMPLAINT

1    27.    *Fourth*, Plaintiff's claims are typical of the claims of the other members of the Class

2  and Plaintiff does not have any interests adverse to the Class.

3    28.    *Fifth*, the prosecution of separate actions by individual members of the Class would

4  create a risk of inconsistent or varying adjudications with respect to individual members of the

5  Class, which would establish incompatible standards of conduct for the party opposing the Class.

6  Further, Defendants have acted on grounds generally applicable to the Class with respect to the

7  matters complained of herein, thereby making appropriate the relief sought herein with respect to

8  the Class as a whole.

9    29.    *Sixth*, a class action is superior to other available methods for fairly and efficiently

10  adjudicating the controversy.

11  **SUBSTANTIVE ALLEGATIONS**

12    **A.    Background of the Company**

13    30.    Morphic is a biopharmaceutical company that discovers and develops oral small-

14  molecule therapeutics for the treatment of autoimmune, cardiovascular, and metabolic diseases, as

15  well as fibrosis and cancer. Its lead product candidate, MORF-057, is in Phase 2 clinical trials for

16  the treatment of inflammatory bowel disease.

17    **B.    Negotiation of the Merger Agreement With Lilly**

18    31.    From time to time, in 2023 and early 2024, representatives of Morphic met with

19  representatives of Lilly, as well as representatives of Company A, Company B and other

20  pharmaceutical companies, to discuss Morphic's clinical programs and product candidates and the

21  possibility of collaboration.

22    32.    Additionally, from time to time, the Board discussed Morphic's strategic

23  alternatives with financial advisors, including Centerview Partners LLC ("Centerview") and

24  Evercore L.L.C ("Evercore").

25    33.    On April 29, 2024, Lilly sent Morphic a written indication of interest proposing to

26  acquire Morphic for $46.00 per share in cash ("April 29 Proposal").

27    34.    On April 30, 2024, the Board met to discuss the April 29 Proposal. The

28  Recommendation Statement states that, due to her employment with Lilly, Defendant Nanda did

6

CLASS ACTION COMPLAINT

1  not participate in this meeting, nor in any subsequent Board meetings or deliberations held in

2  connection with proposals from Lilly. While the Recommendation Statement reveals the potential

3  conflict posed by Nanda's employment relationship with Lilly, and the steps taken to address such

4  potential conflict, it fails to disclose the potential conflict posed by the extensive co-investing

5  relationship between Lilly and Polaris, the venture capital firm at which Defendant Nashat is an

6  executive partner.

7       35.     On May 1, 2024, at the direction of the Board, Defendant Tipirneni and another

8  Morphic executive advised Lilly that the price offered in the April 29 Proposal was inadequate,

9  but invited Lilly to conduct additional limited due diligence to inform its decision as to whether it

10 would be willing to increase its proposed price.

11      36.     On May 3, 2024, as directed by the Board, Centerview contacted representatives of

12 Company A and Company B and informed each of them that the Company had received an

13 acquisition proposal and inquired whether Company A and Company B would be interested in

14 making a proposal to acquire the Company. The Board did not authorize Centerview to contact

15 any other potential counterparties other than Lilly, Company A and Company B, purportedly based

16 on the Board's belief that Lilly, Company A and Company B were the only counterparties most

17 likely to be interested in acquiring the Company that would be able to complete a transaction.

18      37.     On May 28, 2024, after additional due diligence, Lilly submitted a proposal to

19 acquire Morphic for $50.00 per share in cash.

20      38.     On May 29, 2024, at the direction of the Board, Centerview advised Lilly's

21 financial advisor, Citi, that the Board would be willing to provide certain additional due diligence

22 information in order to support Lilly increasing its proposal to at least $60.00 per share in cash.

23      39.     On June 3, 2024, Morphic executives met with representatives of Company B and

24 provided an overview of the Company's business, product candidates, clinical programs and

25 preclinical pipeline. The Recommendation Statement does not reflect that Morphic executives ever

26 met with representative of Company A to provide such an overview.

27      40.     On June 21, 2024, after additional due diligence, Lilly submitted a proposal to

28 acquire Morphic for $53.00 per share in cash.

CLASS ACTION COMPLAINT

1      41.     On June 23, 2024, Centerview advised Citi that the Board would be willing to

2  transact at $60.00 per share in cash.

3      42.     On June 24, 2024, a representative of Company A advised Defendant Tipirneni that

4  Company A would not be interested in discussing an acquisition of Morphic at such time. Also on

5  June 24, 2024, a representative of Company B advised Centerview that Company B was not

6  prepared to make an acquisition proposal at such time.

7      43.     Also on June 24, 2024, Citi advised Centerview that Lilly would be willing to

8  transact at $57.00 per share in cash, and did not have flexibility to go above that price. Later that

9  day, the Board agreed to transact with Lilly at that price. The Board also agreed to grant exclusivity

10  to Lilly through July 11, 2024. Thereafter, legal counsel to Morphic and Lilly negotiated the

11  Merger Agreement.

12      44.     The Recommendation Statement further advises that three of Morphic's principal

13  shareholders—Defendant Springer and entities affiliated with him, Defendant Tipirneni and

14  entities affiliated with him, and Defendant Nashat and entities affiliated with Polaris ("Supporting

15  Stockholders")—agreed to enter into tender and support agreements with Lilly pursuant to which

16  they agreed, *inter alia*, to tender their shares to Lilly in the Tender Offer. As of July 3, 2024, the

17  Supporting Stockholders collectively owned 20.5% of Morphic's outstanding shares.

18      45.     On July 3, 2024, Centerview provided a letter to Morphic disclosing Centerview's

19  relationships with Lilly and its affiliates. The Recommendation Statement discloses that in the two

20  years prior to July 7, 2024, Centerview had not been engaged to provide financial advisory or other

21  services to Lilly, and Centerview did not receive any compensation from Lilly.

22      46.     On July 4, 2024, Morphic entered into separate agreements with Centerview and

23  Evercore to serve as Morphic's financial advisors in connection with the Merger with Lilly.

24      47.     On July 5, 2024, Evercore provided a letter to Morphic disclosing Evercore's

25  relationships with Lilly. The Recommendation Statement, however, fails to disclose whether,

26  during the two-year period prior to July 7, 2024, Evercore provided any services to Lilly or its

27  affiliates, or received any compensation from Lilly or its affiliates for any such services.

28      48.     On July 7, 2024, Centerview provided the Board with an opinion ("Fairness

CLASS ACTION COMPLAINT

Opinion") concluding that the Merger Consideration was fair to Morphic Stockholders. Thereafter, the Board approved the Merger and resolved to recommend to Morphic Stockholders that they tender their shares to Lilly in the Tender Offer. Later that day, Morphic and Lilly executed the Merger Agreement, and the Supporting Stockholders and Lilly executed the tender and support agreements.

49.     On July 8, 2024, Morphic and Lilly announced the Merger.

50.     On July 19, 2024, Morphic filed the false and misleading Recommendation Statement, and Lilly commenced the Tender Offer.

**C.     The Recommendation Statement Contains Material Misstatements and Omissions**

51.     Defendants disseminated a false and misleading Recommendation Statement to Morphic Stockholders that omits material information that renders statements in the Recommendation Statement misleading.

*Misleading Material Omissions Concerning Potential Conflict Affecting Defendant Nashat Arising from Co-Investing Relationships Between Polaris and Lilly*

52.     Under the heading "Arrangements With Current Executive Officers and Directors of the Company," the Recommendation Statement states that the "following is a discussion of all known material agreements, understandings and *any actual or potential conflicts of interest* between the Company and its executive officers or directors that relate to the Transactions." (Recommendation Statement at 7). In the very next sentence, the Recommendation Statement then states:

> at the outset of discussions regarding a transaction between the Company and Lilly, ***the Board was aware of director Dr. Nisha Nanda's relationship with Lilly and requested that Dr. Nanda recuse herself from Board matters concerning Lilly***. Dr. Nanda recused herself from all such matters, including from attending all Board meetings related to the Transactions or strategic alternatives considered by the Board, and from participating in the deliberations or vote to approve the Transactions. (*Id.*).

53.     Collectively, the two statements above in the Recommendation Statement communicate to Morphic Stockholders that the Board was aware of, and adequately addressed and disclosed ***all*** potential conflicts between Morphic directors and Lilly.

CLASS ACTION COMPLAINT

54.     Having traveled down the road of purporting to disclose and address "all actual or potential conflicts of interest" between Morphic directors and Lilly, including the potential conflict arising from the employment relationship between Lilly and Defendant Nanda, Defendants were obligated to be accurate and complete on the subject of potential conflicts. But they were not—Defendants failed to disclose that Defendant Nashat's venture capital firm, Polaris, has co-invested alongside Lilly in at least four healthcare startups since January 2021. Unlike Defendant Nanda, Nashat did not recuse himself from Board meetings concerning the proposed transaction with Lilly, which makes disclosure of the extensive co-investing relationship between Polaris and Lilly to Morphic Stockholders particularly critical given that such relationship would have compromised Nashat's ability to evaluate a proposed transaction with Lilly objectively.

55.     *First*, on January 5, 2024, UpDoc, the developer of a conversational AI platform that manages medication prescriptions, announced a strategic funding round lead by Polaris with participation from Lilly and two other investors.

56.     *Second*, on July 11, 2023, Crossbow Therapeutics ("Crossbow"), a biotechnology company developing a novel class of antibody therapies to treat a broad range of cancers, announced the completion of an $80 million Series A financing round in which Polaris and Lilly participated. Alexandra Cantley of Polaris presently serves on the Crossbow board, and Crossbow's website continues to identify Lilly as an investor. *See* https://www.crossbowtx.com/

57.     *Third*, on March 7, 2023, Volastra Therapeutics ("Volastra"), a clinical stage cancer biotechnology company, announced the completion of a $60 million Series A financing round "***led by founding investors Polaris Partners*** and ARCH Venture Partners ***alongside Eli Lilly and Company***." Ellie McGuire of Polaris and Dr. Arjun Balar of Lilly presently serve together on the Volastra Board. *See* https://www.volastratx.com/our-team/.

58.     *Fourth*, on January 27, 2021, Auron Therapeutics ("Auron"), a biopharmaceutical company, announced the completion of its $12.75 million seed financing round led by Polaris and two other venture capital funds with additional support from Lilly and other investors. Dr. Isaac Ciechanover, a Polaris executive, joined Auron's board, and Brad Robling of Lilly joined as a board observer. Thereafter, on July 20, 2022, Auron announced the completion of its $48 million

10

CLASS ACTION COMPLAINT

1  Series A financing round. Polaris, Lilly and other investors participated. Alexandra Cantley of

2  Polaris presently serves on the Auron board, and Auron's website continues to identify Lilly as an

3  investor. *See* https://www.aurontx.com/about.

4       59.    The above co-investing relationships between Lilly and Nashat's firm, Polaris,

5  represent a potential director conflict about which reasonable Morphic Stockholders would want

6  to know since Nashat did not recuse himself from Board meetings concerning the Merger, and the

7  above co-investing relationships would have compromised Defendant Nashat's ability to evaluate

8  a proposed transaction with Lilly objectively.

9       60.    The Recommendation Statement purports to disclose all potential director conflicts,

10  and cites the potential conflict affecting Defendant Nanda, but those statements are rendered

11  misleading by omission since the Recommendation Statement fails to disclose the extensive co-

12  investing relationship between Lilly and Polaris that would have compromised Nashat's ability to

13  evaluate a proposed transaction with Lilly objectively. As such, to ensure full and fair disclosure

14  of all potential director conflicts—as the Recommendation Statement concedes is required—

15  Defendants must file a supplemental disclosure with the SEC disclosing the co-investing

16  relationships between Polaris and Lilly.

17  ***Material Omissions Concerning Potential Conflicts of Evercore***

18       61.    Proxies seeking shareholder action must fully disclose financial advisor

19  compensation and potential conflicts. Such disclosure is required even when the financial advisor

20  does not provide a fairness opinion so long as the advisor participated in the evaluation of the

21  proposed transaction.

22       62.    The Recommendation Statement discloses Morphic's agreements with both

23  Centerview and Evercore to serve as financial advisors. In doing so, the Recommendation

24  Statement discloses that Morphic agreed to pay $2 million to Evercore, which evidences that

25  Evercore played a material role in connection with the evaluation of the Merger.

26       63.    The Recommendation Statement also states that both Centerview and Evercore

27  provided letters to Morphic disclosing their relationships with Lilly and its affiliates. Yet, while

28  the Recommendation Statement discloses that in the two years prior to July 7, 2024, Centerview

CLASS ACTION COMPLAINT

1    had not been engaged to provide financial advisory or other services to Lilly, and did not receive

2    any compensation from Lilly, the Recommendation Statement fails to provide any disclosure

3    concerning compensation paid to Evercore for any services provided to Lilly during that two year

4    period.

5           64.    Having traveled down the road of (i) disclosing that both Centerview and Evercore

6    provided relationship disclosures to Morphic, (ii) disclosing information concerning both

7    Centerview's and Evercore's advisory agreements with Morphic, and (iii) confirming that

8    Centerview did not receive an compensation from or provide any services to Lilly during the two

9    years prior to July 7, 2024, Defendants are obligated to be accurate and complete on the subject of

10   any potential conflicts affecting their financial advisors by disclosing to Morphic Stockholders any

11   services provided by Evercore to Lilly and its affiliates during the two year period ended July 7,

12   2024, and any compensation paid for such services.

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

15          65.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

16          66.    Defendants caused the Recommendation Statement to be issued with the intention

17   of soliciting Morphic Stockholders to tender their Morphic shares in the Tender Offer.

18          67.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to

19   make any untrue statement of a material fact or omit to state any material fact necessary in order

20   to make the statements made, in the light of the circumstances under which they are made, not

21   misleading . . . in connection with any tender offer or request or invitation for tenders, or any

22   solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

23   15 U.S.C. § 78n(e).

24          68.    Defendants violated Section 14(e) because they caused or allowed the

25   Recommendation Statement to be disseminated to Morphic shareholders in order to solicit them

26   to tender their shares in the Tender Offer even though the Recommendation Statement contained

27   untrue statements of material fact and/or omitted to state material facts necessary in order to make

28   the statements made, in the light of the circumstances under which they were made, not misleading,

12

CLASS ACTION COMPLAINT

1   as more fully specified above. Because the Recommendation Statement contains false and

2   misleading statements and omissions, Morphic Stockholders have been deprived of their

3   entitlement to make a fully informed decision as to whether to tender their shares in connection

4   with the Tender Offer.

5          69.     Defendants undoubtedly knew of, had access to and/or reviewed the omitted

6   material information described above in connection with approving the Recommendation

7   Statement, but allowed it to be omitted from the Recommendation Statement, rendering certain

8   portions of the Recommendation Statement materially incomplete and misleading. As directors

9   and officers of Morphic, the Individual Defendants had a duty to carefully review the

10  Recommendation Statement before it was disseminated to the Company's shareholders to ensure

11  that it did not contain untrue statements of material fact and did not omit material facts that would

12  render other statements therein misleading.

13         70.     Because Defendants disseminated the false and misleading Recommendation

14  Statement to solicit Morphic Stockholders to tender their Morphic shares in the Tender Offer, the

15  Recommendation Statement is an essential link in consummating the Merger. As a direct result of

16  Defendants' preparation, review, and dissemination of the false and misleading Recommendation

17  Statement, Plaintiff and other Morphic shareholders are unable to decide on a fully informed basis

18  whether or not to tender their shares and accept the inadequate Merger Consideration in connection

19  with the Merger.

20         71.     The misrepresentations and omissions in the Recommendation Statement as more

21  fully described above are material in that a reasonable Morphic Stockholder would consider them

22  important in deciding whether to tender their shares in the Tender Offer. In addition, a reasonable

23  Morphic Stockholder would view a full and accurate disclosure as having significantly altered the

24  "total mix" of information made available in the Recommendation Statement.

25         72.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise

26  of this Court's equitable power to issue an injunction can Plaintiff and the Class be fully protected

27  from the immediate and irreparable injury that Defendants' actions threaten to inflict if the material

28  misrepresentations and omissions alleged herein are not corrected prior to the Expiration Time.

CLASS ACTION COMPLAINT

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

73.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Morphic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Morphic and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and/or misleading.

75.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76.     By virtue of their positions with the Company, each of the Individual Defendants is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer. They were thus directly involved in the making of the Recommendation Statement.

77.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

78.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury

CLASS ACTION COMPLAINT

1  that Defendants' actions threaten to inflict if the material misrepresentations and omissions alleged

2  herein are not corrected prior to the Expiration Time.

3                                      **COUNT III**

4  **Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure**

5          79.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

6  herein.

7          80.     By virtue of their role as directors and/or officers of the Company, the Individual

8  Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of

9  candor/disclosure under Delaware law, which required them to disclose fully and fairly all material

10  information within their control when they seek shareholder action, and to ensure that the

11  Recommendation Statement did not omit any material information or contain any materially

12  misleading statements.

13          81.     As alleged herein, the Individual Defendants breached their duty of

14  candor/disclosure by approving or causing the materially deficient Recommendation Statement to

15  be disseminated to Plaintiff and the Company's other public shareholders.

16          82.     The misrepresentations and omissions in the Recommendation Statement are

17  material, and Plaintiff and other Morphic Stockholders will be deprived of their right to make an

18  informed decision on whether to tender their shares to Lilly if such misrepresentations and

19  omissions are not corrected prior to the Expiration Time. Where a shareholder has been denied

20  one of the most critical rights he or she possesses—the right to fully informed corporate suffrage—

21  the harm suffered is irreparable.

22          83.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise

23  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

24  and irreparable injury that Defendants' actions threaten to inflict if the material misrepresentations

25  and omissions alleged herein are not corrected prior to the Expiration Time.

26

27

28

CLASS ACTION COMPLAINT

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in favor of himself and the Class against the Defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Preliminarily enjoining expiration of the Tender Offer, and enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating the Merger, until Defendants disclose the material information identified above that has been omitted from the Recommendation Statement;

C.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: July 25, 2024                           Respectfully submitted,

**OF COUNSEL**                                  */s/ David E. Bower*
                                                David E. Bower

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde                              David E. Bower SBN 119546
Benjamin Vanderhyden                            **MONTEVERDE & ASSOCIATES PC**
The Empire State Building                       600 Corporate Pointe, Suite 1170
350 Fifth Avenue, Suite 4740                    Culver City, CA 90230
New York, New York 10118                        Tel: (213) 446-6652
Tel: 212-971-1341                               Fax: (212) 202-7880
Fax: 212-202-7880                               dbower@monteverdelaw.com
jmonteverde@monteverdelaw.com
bvanderhyden@monteverdelaw.com                  *Counsel for Plaintiff*

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter

16

1

25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

2

3

*Counsel for Plaintiff*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

CLASS ACTION COMPLAINT